**FILED**

OCT - 5 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

KAWASAKI KISEN KAISHA, LTD. and )
"K" LINE AMERICA, INC., )
 )
        Plaintiffs, )
 )
    v. )
 )
PLANO MOLDING CO. and )
CMT INTERNATIONAL, INC.; )
 )
        Defendants. )

**07CV5675
JUDGE LEINENWEBER
MAG. JUDGE MASON**

## COMPLAINT

Plaintiffs KAWSAKI KISEN KAISHA, LTD. ("KL") and "K" LINE AMERICA,

INC. ("KAM"), by their undersigned attorneys, for their Complaint against Defendants PLANO

MOLDING COMPANY ("Plano") and CMT INTERNATIONAL, INC. ("CMT") allege upon

information and belief as follows:

    1.    This is a case of admiralty and maritime jurisdiction under 28 U.S.C. § 1333

and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure.

    2.    This Complaint seeks money damages, indemnity and/or contribution, and

declaratory relief.

    3.    Venue is proper in this Court.

## THE PARTIES

    4.    KL is a Japanese corporation with its principal place of business in Tokyo,

Japan. KL is an ocean common carrier offering "intermodal" transportation of goods, including

ocean and land transport, subject to regulation in the United States trades by the Federal Maritime

Commission, Washington, D.C. ("FMC"). KL uses independent contractor railroads and truckers to perform inland cargo transportation.

5.      KAM is a corporation organized under the laws of the State of Michigan with its principal place of business in Richmond, Virginia. KAM acts solely as an agent for KL, is not an ocean or rail carrier, and performs no transportation services.

6.      Plano is a corporation organized under the laws of the State of Illinois with its principal place of business in Plano, Illinois, and is engaged in the manufacture of injection-molded plastic cases for guns, tackle, tools, cosmetics, and other items. Plano is subject to *in personam* jurisdiction in the State of Illinois.

7.      CMT is a corporation organized under the laws of the State of Illinois with its principal place of business in Carbondale, Illinois, and is engaged in the business of arranging for the manufacture, sale, and shipment of steel injection molds from Asia to the United States. CMT is a member of the En Jinn Group, which is a group of companies based in Taiwan and China. CMT is subject to *in personam* jurisdiction in the State of Illinois.

## BACKGROUND

## PLANO ORDERS THE STEEL MOLDS

8.      On or about November 6, 2004, Plano requested that CMT provide a price quote to "Design, Engineer, Construct and Deliver" specialty steel injection molds made to meet special specifications (the "Steel Molds").

9.      On November 16, 2004, CMT provided Plano with a price quote and specified that the terms of the shipment would be "F.O.B. Shanghai," such that title to the Steel Molds would pass in Shanghai.

10.     On November 19, 2004, Plano submitted a purchase order for the Steel Molds to CMT. The purchase order indicated that "CMT (EnJinn Group)" would "Design, engineer, construct and supply" the Steel Molds.

11.     CMT arranged to have Kunshan Yuanjin Plastic & Electronic Co., Ltd., a company located in Suzhou, China ("Kunshan"), manufacture the Steel Molds in China. Kunshan is also a member of the En Jinn Group.

12.     Representatives of both Plano and CMT traveled to China to supervise and inspect the Steel Molds while they were being manufactured.

13.     CMT billed Plano for the cost of shipping the Steel Molds from China to Chicago, Illinois, and also for the cost of United States customs duties.

## SHIPMENT BOOKED WITH
## WORLD COMMERCE SERVICES

14.     Plano requested that World Commerce Services, LLC ("World") arrange for shipment of the Steel Molds to Illinois, as its agent.

15.     World is a limited liability company organized in the State of Illinois with its principal place of business in Schaumburg, Illinois. World is engaged in business as a Non-Vessel Operating Common Carrier ("NVOCC"). As an NVOCC, World contracts to ship goods from one place to another, but does not itself operate vessels. Through an agent in China, World arranged for KL to transport the Steel Molds from China to Illinois.

16.     Plano and CMT both communicated with representatives of World prior to, during and after the booking of the shipment.

17.     On April 3, 2005, World issued Bill of Lading no. SHA05038141, reflecting carriage of shipping container TRLU 273341-0 from Shanghai, China to Chicago, Illinois (the

3

"World Bill of Lading"). The World Bill of Lading identified the CHANG JIANG BRIDGE as the "Exporting Vessel."

18. Plano and CMT knew or should have known that World was arranging for KL to transport the goods on their behalf and that KL would issue a Bill of Lading on its standard terms and conditions.

19. The World Bill of Lading specifically provides that World is entitled to subcontract any part of the carriage (including handling and storage) and that every servant, agent, or subcontractor is entitled to the rights, exemptions, defenses, and immunities provided by the World Bill of Lading.

20. Bills of Lading and Waybills are documents customarily issued by ocean carriers or NVOCC's as contracts for the carriage of goods, which include terms and conditions common to the industry. Ocean carriers and NVOCC's must publish their Bills of Lading and Waybills, as required by the Shipping Act of 1984, as amended, and FMC regulations. A carrier's or NVOCC's Bills of Lading and Waybills, and their associated terms and conditions, are thus a matter of public record.

21. The World Bill of Lading identifies Plano as the Consignee of the Steel Molds, CMT as the Notify Party, and Kunshan as the Shipper.

22. Both Plano and CMT had made previous shipments with World and had previously received copies of the terms and conditions of the World Bill of Lading.

## WORLD BOOKS THE SHIPMENT WITH KL

23. On approximately March 28, 2005, World's agent in Shanghai booked the Steel Molds shipment with KL on board the CHANG JIANG BRIDGE.

4

24.     World specifically advised Plano and CMT that it was making the booking with KL.

25.     On approximately April 3, 2005, KL issued an electronic Waybill bearing the number KKLUSH9951551 (the "KL Waybill") to World, reflecting carriage from Shanghai, China to Long Beach, California on board the vessel M/V CHANG JIANG BRIDGE, with further inland carriage to Chicago, Illinois.

26.     The KL Waybill identifies THI Group, Ltd. in Shanghai, China ("THI") as the Shipper and World as the Consignee.

27.     The KL Waybill incorporates the terms and conditions of KL's standard import Bill of Lading ("KL Bill of Lading"). World had received and had actual notice of the terms and conditions of the KL Waybill and the KL Bill of Lading. Both Plano and CMT had actual knowledge of the KL Waybill and the KL Bill of Lading through World.

28.     The KL Waybill and the KL Bill of Lading have been published as required by FMC regulations and are thus a matter of public record.

29.     Both Plano and CMT had been party to, or had otherwise been involved in, prior shipments made through KL. In this connection, both Plano and CMT had previously received copies of the terms and conditions pertaining to the KL Waybill and the KL Bill of Lading.

## KL ARRANGES RAIL TRANSPORT WITH UNION PACIFIC

30.     KL and Union Pacific Railroad Co. ("UPRR") are parties to an agreement for the purchase of rail services called the Exempt Rail Transportation Agreement ("ERTA"). Pursuant to ERTA, KL arranges rail transportation for individual Shippers with UPRR.

31.     KL arranged rail carriage of the Steel Molds by UPRR from Long Beach, California to Chicago, Illinois.

## LOADING THE STEEL MOLDS

32.     After the initial booking KL supplied container TRLU 273341-0 to THI in China. THI acted as an agent of World, Plano and CMT.

33.     The Steel Molds were loaded inside container TRLU 273341-0 while the container was in the custody and control of THI and in accordance with instructions from World, Plano and/or CMT.

34.     The Steel Molds were heavy, dense steel blocks weighing approximately 18,900 and 6,200 pounds each.

35.     Even though the weight of the Steel Molds was within the shipping container's weight limit, the container could not withstand extreme concentrations of weight over small areas of its floor.

36.     Pertinent laws and regulations, industry standards and norms, and warranties and conditions in the World and KL Bills of Lading required that the Steel Molds be blocked and braced and otherwise secured to evenly distribute the weight of the cargo throughout the floor of the container and to prevent the cargo from moving or shifting during transit.

37.     Plano and CMT knew or should have known that laws, regulations, and industry standards required proper blocking and bracing to distribute the weight of the Steel Molds inside the shipping container.

38.     On March 22, 2005, THI delivered container TRLU273341-0 to KL with the Steel Molds stowed inside the container for transport to Chicago. In accordance with industry custom, container TRLU 273341-0 was already loaded and sealed when it was delivered to KL.

39.     KL and KAM did not know the manner in which the cargo inside container TRLU 273341-0 had been stowed.

6

40.     In contravention of industry standards and norms, the Steel Molds inside container TRLU 273341-0 were improperly blocked and braced and otherwise were not properly secured within the container.

41.     Plano and CMT or their agents or other third-parties acting on their behalf arranged for, directed, and/or otherwise participated in the loading of the Steel Molds inside container TRLU 273341-0.

42.     Plano and CMT or their agents or third-parties acting on their behalf knew or should have known that the Steel Molds were not properly stowed inside container TRLU 273341-0.

## THE DERAILMENT

43.     On April 18, 2005, the M/V CHANG JIANG BRIDGE arrived at Long Beach, California and unloaded its cargo.

44.     KL turned over container TRLU 273341-0 to UPRR at the Long Beach intermodal facility and the container was loaded on railcar DTTX 73196.

45.     UPRR connected railcar DTTX73196 to double-stack train KTSKS7-17 for transport from Long Beach to its ultimate destination in Chicago, Illinois.

46.     On April 21, 2005, while the train was traveling near Tyrone, Oklahoma, the Steel Molds broke through the floor of container TRLU 273341-0 and fell onto the railbed below. The Steel Molds were immediately struck by the following railcar, and the train derailed from the tracks. Numerous shipments were damaged or destroyed as a result of the derailment.

47.     UPRR's track, railcars, and other associated equipment also were damaged as a result of the derailment.

48.     KL's shipping containers also were damaged as a result of the derailment.

49. After the derailment, CMT and Plano inquired into the status of the Steel Molds shipment, submitted claims to KL and/or KAM in respect of the Steel Molds, and otherwise acted to accept the shipment.

## THE NEW YORK LITIGATION

50. On January 25, 2006, Indemnity Insurance Company of North America ("IINA") brought a civil action against KL, KAM, and UPRR in the United States District Court for the Southern District of New York. This suit is docketed under the number 06 Civ. 0615 and is assigned to the Honorable Barbara S. Jones. This suit seeks to recover for certain cargo shipments that were allegedly damaged in the derailment.

51. Other persons seeking to recover for cargo shipments that were allegedly damaged in the derailment brought additional and subsequent actions against KL, KAM, and UPRR in the Southern District of New York. These actions were consolidated with the above-referenced IINA suit and are collectively referred to as the "New York Litigation."

52. KL, KAM, and UPRR answered the IINA complaint, and KL (and KAM) and UPRR asserted cross-claims against each other for any and all amounts they may be compelled to pay to plaintiffs in the New York Litigation, for indemnity, and for their own damages and losses.

53. KL and KAM filed a third-party complaint against Plano and CMT, and also against World, THI, Kunshan, and Shanghai Haixing, on February 9, 2006.

54. The third-party complaint against Plano and CMT alleged that improper loading of the Steel Molds in container TRLU 273341-0 caused the derailment to occur, and that pursuant to the terms of the World Bill of Lading and the KL Waybill, Plano and CMT were liable to defend and indemnify KL and KAM against all claims, damages, and losses.

8

55. CMT moved to dismiss the third-party complaint on the ground of lack of personal jurisdiction on March 24, 2006.

56. Plano moved to dismiss the third-party complaint on the ground of lack of personal jurisdiction on May 1, 2006.

57. On June 14, 2007, the district court granted the motions of Plano and CMT and dismissed the claims asserted against them on the ground of lack of personal jurisdiction.

## DAMAGES SUSTAINED AS A
## RESULT OF THE DERAILMENT

58. As a result of the derailment, various persons claiming interests in the shipments that were aboard the derailed train are prosecuting the claims at issue in the New York Litigation against KL and KAM. These plaintiffs seek to recover approximately $2,881,033.11 on account of damages allegedly sustained to their respective shipments.

59. KL and KAM were the owners or lessees of shipping containers that were damaged in the derailment. KL sustained a loss of approximately $126,498.15, together with interest, in consequence of damages suffered by these shipping containers.

60. UPRR claims to have sustained a loss of approximately $2,900,189.14, together with interest, in consequence of damage sustained to its train, railcars, track, and associated components. UPRR seeks to recover this alleged loss from KL and KAM.

61. KL and KAM have sustained costs and expenses, including attorney's fees, in consequence of the claims asserted against them in the New York Litigation. These costs and expenses should be indemnified by the defendants herein.

## THE KL BILL OF LADING

62. The KL Bill of Lading defines the term "Merchant" as follows:

9

> "Merchant" includes the shipper, consignor, consignee, owner and
> receiver of Goods, and Holder, and anyone acting on behalf of any
> such person, including but not limited to agents, servants,
> independent contractors and freight forwarders.

63. KAM is entitled to the benefit of the rights and/or defenses provided by or under the KL Bill of Lading

64. Under the terms and conditions of the KL Bill of Lading, Plano and CMT, as "Merchants," are liable for, and must defend and indemnify KL and its subcontractors or agents (including KAM) against, any and all claims, losses, damages, judgments, settlements, costs, or expenses (including attorney's fees and costs) that arise out of or are in any way related to the stowage, securing, blocking and/or bracing of the contents of shipping containers, the closing or sealing of shipping containers, the distribution of cargo weights within shipping containers, or the suitability of any shipping containers and/or the contents of any shipping containers for carriage.

65. Under the terms and conditions of the KL Bill of Lading, Plano and CMT, as "Merchants," are liable for, and must defend and indemnify KL and its subcontractors or agents (including KAM) against, any and all claims, losses, damages, judgments, settlements, costs, or expenses (including attorney's fees and costs) that are suffered or incurred as a result of the failure to declare any package containing more than one metric ton or as a result of the failure to clearly and durably mark the outside of the package.

66. Under the terms and conditions of the KL Bill of Lading, Plano and CMT, as "Merchants," warranted that the cargo in the Container was properly stowed, secured, blocked, and braced, with a proper weight distribution, and was otherwise in all respects safe for intermodal transport including rail carriage.

10

67. The Steel Molds were not properly stowed, secured, blocked, or braced in the container and/or were so configured as to be too heavy to be safely carried in the container and/or the weight thereof was improperly distributed and the tendering for shipment of the sealed container in that condition was negligent and a breach of Merchants' duties and/or warranties to KL and its subcontractors or agents (including KAM).

68. The losses and damage alleged in the New York Litigation result from causes for which Plano and CMT are responsible as "Merchants" under the terms and conditions of the contract of carriage with KL.

69. The other losses and damages suffered by KL due to the Derailment result from causes for which any and all persons who are Merchants are responsible under the terms and conditions of the contract of carriage with KL.

70. The terms of the KL Bill of Lading are usual and customary within the industry.

## THE WORLD BILL OF LADING

71. The World Bill of Lading defines the term "Merchant" as follows:

> "Merchant" includes the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.

72. KL and its subcontractors and agents (including KAM) are entitled to the rights and/or defenses provided by or under the World Bill of Lading.

73. Under the terms and conditions of the World Bill of Lading, Plano and CMT, as "Merchants," warranted that the stowage of the Steel Molds inside the container was safe and proper and suitable for handling and carriage and must indemnify KL and KAM against any and all

injury, loss, or damage (including attorney's fees and costs) that arise out of or are in any way related to any breach of this warranty.

74.     Under the terms and conditions of the World Bill of Lading, Plano and CMT, as "Merchants," promised to comply with all laws or regulations concerning overweight containers and must indemnify KL and KAM against any loss or liability suffered or incurred as a result any failure to comply with such laws or regulations.

75.     Under the terms and conditions of the World Bill of Lading, Plano and CMT, as "Merchants," warranted that the particulars furnished with regard to the shipment were correct, and must indemnify KL and KAM against any and all claims, penalties, losses, or damages (including attorney's fees and costs) that arise out of any inaccuracy or lack of timely presentation of particulars pertaining to the Steel Molds shipment.

76.     The Steel Molds were not properly stowed, secured, blocked, or braced in the Container and/or were so configured as to be too heavy to be safely carried in the Container and/or the weight thereof was not properly distributed and the tendering for shipment of the sealed Container in that condition was negligent and a breach of Plano's and CMT's duties and/or warranties under the World Bill of Lading

77.     The losses and damages alleged in the New York Litigation result from causes for which Plano and CMT, as "Merchants," are responsible under the terms and conditions of the World Bill of Lading.

78.     The other losses and damages suffered by KL due to the Derailment result from causes for which Plano and CMT, as "Merchants," are responsible under the terms and conditions of the World Bill of Lading.

79.     The terms of the KL Bill of Lading arc usual and customary within the industry.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION AGAINST PLANO: INDEMNIFICATION OF KL AND KAM UNDER THE BILLS OF LADING

80.     KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 79 of this Complaint as if set forth herein in full.

81.     Plano is a "Merchant" as defined in the KL Bill of Lading.

82.     Plano is a "Merchant" as defined in the World Bill of Lading.

83.     Plano had actual or constructive notice of the terms of the KL Waybill and the KL Bill of Lading, and had accepted, and is bound by, those terms.

84.     Plano had actual or constructive notice of the terms of the World Bill of Lading, and had accepted, and is bound by, those terms.

85.     As a Merchant under the terms and conditions of the KL Bill of Lading, Plano must defend and indemnify KL and its subcontractors or agents (including KAM) against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including any amounts which KL and its subcontractors or agents (including KAM) may incur or be held liable to pay, on account of the Derailment, and for attorney's fees and costs incurred in connection therewith.

86.     Alternatively, as a Merchant under the terms and conditions of the World Bill of Lading, Plano must defend and indemnify KL and its subcontractors or agents (including KAM) against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including any amounts which KL and its subcontractors

13

or agents (including KAM) may incur or be held liable to pay, on account of the Derailment, and for attorney's fees and costs incurred in connection therewith.

87.    Plano breached its contractual obligations under the KL Bill of Lading and World Bill of Lading by failing to defend and indemnify KL and KAM from any and all claims which have arisen from the Derailment, including all claims raised in the New York litigation.

88.    As a result of said breach, KL and KAM have been forced to defend themselves in the New York litigation, have incurred substantial legal fees and expenses and face the potential of an adverse judgment.

## SECOND CAUSE OF ACTION AGAINST PLANO: RECOVERY OF KL'S DAMAGES UNDER THE BILLS OF LADING

89.    KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 88 of this Complaint as if set forth herein in full.

90.    Plano is a "Merchant" as defined in the KL Bill of Lading.

91.    Plano is a "Merchant" as defined in the World Bill of Lading.

92.    Plano had actual or constructive notice of the terms of the KL Waybill and the KL Bill of Lading, and had accepted, and is bound by, those terms.

93.    Plano had actual or constructive notice of the terms of the World Bill of Lading, and had accepted, and is bound by, those terms.

94.    As a Merchant under the terms and conditions of the KL Bill of Lading, Plano is liable for the damages suffered by KL and KAM on account of the Derailment, including specifically $126,498.15 in damages sustained by KL in respect of the damaged shipping containers.

95.    Alternatively, as a Merchant under the terms and conditions of the World Bill of Lading, Plano is liable for the damages suffered by KL and KAM on account of the Derailment,

14

including specifically $126,498.15 in damages sustained by KL in respect of the damaged shipping containers.

96.     Plano breached its contractual obligations under the KL Waybill, the KL Bill of Lading, and the World Bill of Lading by failing to reimburse KL and KAM for these damages.

97.     As a result of said breach, KL and KAM have been damaged in the amount of $126,498.15.

### THIRD CAUSE OF ACTION AGAINST PLANO: NEGLIGENCE (DAMAGES)

98.     KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 97 of this Complaint as if set forth herein in full.

99.     Plano knew or should have known that the molds it was purchasing would be transported in a sealed container through different modes of transportation over a great distance, and that because of their concentrated weight they posed a significant risk of harm to persons and property if not properly loaded, blocked, and braced.

100.    Plano had a duty to ensure that the Steel Molds were safely and securely packed inside container TRLU 273341-0 and were otherwise safely prepared for intermodal transportation.

101.    Plano breached this duty in one or more of the following ways:

a.      Participated in loading the cargo and did not exercise reasonable care to ensure that the cargo was properly stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

b.      Failed to ensure that the cargo was stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

c.    Failed to provide adequate instructions to shipper regarding safe and proper methods for the stowing, securing, blocking, and bracing of the cargo;

d.    Acquiesced in the shipper's improper method of stowing, securing, blocking, and bracing of the cargo;

e.    Negligently directed the loading process of the cargo;

f.    Was otherwise careless and negligent; and

g.    Is liable for the negligent acts of its agents THI and/or World.

102.    Plano's negligence caused the damages suffered by KL and KAM.

103.    Plano is liable to KL and KAM for the damages they have suffered in consequence of the derailment.

## FOURTH CAUSE OF ACTION AGAINST PLANO:
## NEGLIGENCE (INDEMNITY, CONTRIBUTION)

104.    KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 103 of this Complaint as if set forth herein in full.

105.    Plano owed a separate and independent duty to KL and KAM to ensure that cargo tendered for carriage was safely and securely packed inside container TRLU 273341-0 and was otherwise safely prepared for intermodal transportation.

106.    Plano breached this duty in one or more of the following ways:

a.    Participated in loading the cargo and did not exercise reasonable care to ensure that the cargo was properly stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

b.    Failed to ensure that the cargo was stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

c. Failed to provide adequate instructions to shipper regarding safe and proper methods for the stowing, securing, blocking, and bracing of the cargo;

d. Acquiesced in the shipper's improper method of stowing, securing, blocking, and bracing of the cargo;

e. Negligently directed the loading process of the cargo;

f. Was otherwise careless and negligent; and

g. Is liable for the negligent acts of its agents THI and/or World.

107. Plano's negligence caused the cargo damages sought by Plaintiffs in the New York Litigation, and further, it caused the damages sought by UPRR in the New York Litigation.

108. If KL and/or KAM are held liable to Plaintiffs or to UPRR in the New York Litigation, such liability will be on account of the fault of Plano. KL and KAM are free from fault.

109. Plano is accordingly liable to indemnify KL and KAM for any and all damages assessed against them in the New York Litigation, and also for attorney's fees and costs.

110. In the alternative, Plano is accordingly liable to contribute to KL and KAM for any damages that may be assessed against them in the New York Litigation, and also for attorney's fees and costs.

### FIFTH CAUSE OF ACTION AGAINST CMT: INDEMNIFICATION OF KL AND KAM UNDER THE BILLS OF LADING

111. KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 110 of this Complaint as if set forth herein in full.

112. CMT is a "Merchant" as defined in the KL Bill of Lading.

113. CMT is a "Merchant" as defined in the World Bill of Lading.

114.    CMT had actual or constructive notice of the terms of the KL Waybill and the KL Bill of Lading, and had accepted, and is bound by, those terms.

115.    CMT had actual or constructive notice of the terms of the World Bill of Lading, and had accepted, and is bound by, those terms.

116.    As a Merchant under the terms and conditions of the KL Bill of Lading, CMT must defend and indemnify KL and its subcontractors or agents (including KAM) against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including any amounts which KL and its subcontractors or agents (including KAM) may incur or be held liable to pay on account of the Derailment, and for attorney's fees and costs incurred in connection therewith.

117.    Alternatively, as a Merchant under the terms and conditions of the World Bill of Lading, CMT must defend and indemnify KL and its subcontractors or agents (including KAM) against the claims asserted in the New York Litigation and against any other claims, losses, damages, judgments, settlements, costs, or expenses, including any amounts which KL and its subcontractors or agents (including KAM) may incur or be held liable to pay on account of the Derailment, and for attorney's fees and costs incurred in connection therewith.

118.    CMT breached its contractual obligations under the KL Bill of Lading and the World Bill of Lading by failing to defend and indemnify KL and KAM from any and all claims which have arisen from the Derailment, including all claims raised in the New York litigation.

119.    As a result of said breach, KL and KAM have been forced to defend themselves in the New York litigation, have incurred substantial legal fees and expenses, and face the potential of an adverse judgment.

## SIXTH CAUSE OF ACTION AGAINST CMT:
## RECOVERY OF KL'S DAMAGES
## UNDER THE BILLS OF LADING

120. KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 119 of this Complaint as if set forth herein in full.

121. CMT is a "Merchant" as defined in the KL Bill of Lading.

122. CMT is a "Merchant" as defined in the World Bill of Lading.

123. CMT had actual or constructive notice of the terms of the KL Waybill and the KL Bill of Lading, and had accepted, and is bound by, those terms.

124. CMT had actual or constructive notice of the terms of the World Bill of Lading, and had accepted, and is bound by, those terms.

125. As a Merchant under the terms and conditions of the KL Bill of Lading, CMT is liable for the damages suffered by KL and KAM on account of the Derailment, including specifically $126,498.15 in damages sustained by KL in respect of the damaged shipping containers.

126. Alternatively, as a Merchant under the terms and conditions of the World Bill of Lading, CMT is liable for the damages suffered by KL and KAM on account of the Derailment, including specifically $126,498.15 in damages sustained by KL in respect of the damaged shipping containers.

127. CMT breached its contractual obligations under the KL Waybill, the KL Bill of Lading, and the World Bill of Lading by failing to reimburse KL and KAM for these damages.

128. As a result of said breach, KL and KAM have been damaged in the amount of $126,498.15.

19

## SEVENTH CAUSE OF ACTION AGAINST CMT:
## NEGLIGENCE (DAMAGES)

129. KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 128 of this Complaint as if set forth herein in full.

130. CMT knew or should have known that the molds it was purchasing would be transported in a sealed container through different modes of transportation over a great distance, and that because of their concentrated weight they posed a significant risk of harm to persons and property if not properly loaded, blocked, and braced.

131. CMT had a duty to ensure that the Steel Molds were safely and securely packed inside container TRLU 273341-0 and were otherwise safely prepared for intermodal transportation.

132. CMT breached this duty in one or more of the following ways:

a. Participated in loading the cargo and did not exercise reasonable care to ensure that the cargo was properly stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

b. Failed to ensure that the cargo was stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

c. Failed to provide adequate instructions to shipper regarding safe and proper methods for the stowing, securing, blocking, and bracing of the cargo;

d. Acquiesced in the shipper's improper method of stowing, securing, blocking, and bracing of the cargo;

e. Negligently directed the loading process of the cargo;

f. Was otherwise careless and negligent; and

g. Is liable for the negligent acts of its agents THI and/or World.

133.    CMT's negligence proximately caused the damages suffered by KL and KAM.

134.    CMT is accordingly liable to KL and KAM for the damages they have suffered in consequence of the derailment.

### EIGHTH CAUSE OF ACTION AGAINST CMT: NEGLIGENCE (INDEMNITY, CONTRIBUTION)

135.    KL and KAM repeat and reallege each and every allegation contained in paragraphs 1 through 134 of this Complaint as if set forth herein in full.

136.    CMT owed a separate and independent duty to KL and KAM to ensure that cargo tendered for carriage was safely and securely packed inside container TRLU 273341-0 and was otherwise safely prepared for intermodal transportation.

137.    CMT breached this duty in one or more of the following ways:

a.      Participated in loading the cargo and did not exercise reasonable care to ensure that the cargo was properly stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

b.      Failed to ensure that the cargo was stowed, secured, blocked, or braced in the container so as to be safely transported by sea, land, and rail;

c.      Failed to provide adequate instructions to shipper regarding safe and proper methods for the stowing, securing, blocking, and bracing of the cargo;

d.      Acquiesced in the shipper's improper method of stowing, securing, blocking, and bracing of the cargo;

e.      Negligently directed the loading process of the cargo;

f.      Was otherwise careless and negligent; and

g.      Is liable for the negligent acts of its agents THI and/or World.

138. CMT's negligence caused the cargo damages sought by Plaintiffs in the New York Litigation, and further, it caused the damages sought by UPRR in the New York Litigation.

139. If KL and KAM are held liable to Plaintiffs or to UPRR in the New York Litigation, such liability will be on account of the fault of CMT. KL and KAM are free from fault.

140. CMT is accordingly liable to indemnify KL and KAM for any and all damages assessed against them in the New York Litigation, and also for attorney's fees and costs.

141. In the alternative, CMT is accordingly liable to contribute to KL and KAM for any damages that may be assessed against them in the New York Litigation, and also for attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, KL and KAM pray that:

(a) This Honorable Court declare that Plano and CMT are obligated to defend and indemnify KL and KAM against the claims asserted in the New York Litigation;

(b) Defendants Plano and CMT be adjudged liable to KL and KAM for any and all loss or damage to cargo and for any amounts that KL and/or may be held to pay to any other party (including UPRR) in the New York Litigation, together with interest and costs and attorney's fees incurred in connection therewith;

(c) Alternatively, that Defendants Plano and CMT be adjudged liable to contribute to KL and KAM against any amounts that KL and/or KAM may be held liable to pay to any other party (including UPRR) in the New York Litigation, together with interest and costs and attorney's fees incurred in connection therewith;

(d) Defendants Plano and CMT be adjudged liable to KL and KAM for their other losses and damages as alleged herein, together with interest and costs and attorneys fees incurred in connection therewith; and

(e) This Honorable Court grant KL and KAM such other and further relief as the Court may deem just, equitable and proper.

Dated:       October 4, 2007

Respectfully submitted,
KAWASAKI KISEN KAISHA, LTD. and
"K" LINE AMERICA, INC.

By: _____

One of their Attorneys

Warren J. Marwedel – ARDC 01785109
wmarwedel@mmr-law.com
Robert L. Reeb – ARDC 06189415
rreeb@mmr-law.com
Matthew C. Koch – ARDC 6283277
mkoch@mmr-law.com
MARWEDEL, MINICHELLO & REEB, P.C.
10 S. Riverside Plaza, Suite 720
Chicago, Illinois 60606
Phone: (312) 902-1600
Fax: (312) 902-9900

*Of Counsel:*

BLANK ROME LLP
John D. Kimball, Esq.
jkimball@blankrome.com
David D. Jensen, Esq.
djensen@blankrome.com
405 Lexington Avenue
New York, New York 10174-0208
Phone: (212) 885-5000
Fax: (212) 885-5001