IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KAWASAKI KISEN KAISHA, LTD.** and "K" LINE AMERICA, INC., Plaintiffs, v. **PLANO MOLDING CO. and CMT INTERNATIONAL, INC.,** Defendants. | Case No. 07 C 5675 Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Kawasaki Kisen Kaisha, Ltd. ("KL") and K Line America ("KAM") (hereinafter, the "Plaintiffs") have brought suit against Defendants Plano Molding Company ("Plano") and CMT International, Inc. ("CMT") (hereinafter, the "Defendants"), alleging negligence and breach of contractual assurances in the packing of two steel molds. Both Plano and CMT now bring individual Motions to Dismiss. For the reasons stated below, the motions are **denied**.

**I. FACTS**

In ruling on a motion to dismiss, the Court accepts the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the Plaintiffs. *See Brown v. Budz*, 398 F.3d 904, 908 (7th Cir. 2005). Despite their professed understanding of this rule, all parties devote substantial portions

of their briefs arguing what they believe to be the *true* facts of this case, instead of focusing on the legal sufficiency of the complaint *as pled*. Although the Court may properly consider the Bills of Lading referenced in and essential to Plaintiffs' complaint, *see McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006), further factual contentions are inappropriate in a motion to dismiss. *See Walker v. Gibson*, 604 F.Supp. 916, 920 (N.D. Ill. 1985). Plano's Declaration of Robb Younger, which flatly denies various allegations of the Plaintiffs' Complaint, will not be considered by the Court, and Plaintiffs' Motion to Strike the Declaration will be **granted**. In fair turn, the Court will also exclude the affidavit and e-mails presented by Plaintiffs which argue that the terms of delivery were changed from F.O.B. to D.D.P.

Despite numerous further disputes and uncertainty in the Complaint about the roles played by Defendants and Defendants' relationships to the other parties involved, the following facts are clearly and unambiguously alleged in the Complaint, and they guide our decision in ruling on the motions to dismiss:

In November 2004, Plano contracted CMT to design, engineer, construct, and supply specialty steel injection molds. CMT arranged for Kunshan Yuanjin Plastic & Electronic Co., Ltd. ("Kunshan") to manufacture the steel molds, and CMT billed Plano for the cost of customs duties and for shipping from China to Chicago. World Commerce Services, LLC ("World"), a non-vessel

operating common carrier, was hired to arrange shipment of the steel molds (though it is unclear whether World was hired by Plano or CMT). World then arranged for KL to transport the steel molds, and KL, in turn, arranged for inland rail transportation with Union Pacific Railroad Company. KL supplied a shipping container to THI Group Ltd. ("THI"), who loaded the steel molds into the container, though again it is unclear from the Complaint who hired THI.

The Complaint further alleges that the steel molds were loaded in accordance with instructions from World, Plano, and/or CMT and that Defendants or their agents arranged for, directed, and/or otherwise participated in the loading of the steel molds. Pertinent laws, regulations, and industry standards required that the steel molds be blocked and braced to evenly distribute the weight of the cargo. Plaintiffs allege that Defendants knew or should have known of this requirement and that Defendants or their agents knew or should have known that the steel molds were not properly stowed inside the container. The KL and World Bills of Lading also required the "Merchants" to the transaction to warrant that the cargo was safely stowed and secured.

Because the molds were improperly packed, they broke through the floor of the container during inland rail transit, fell onto the rail bed below, and caused the train to derail. KL's shipping containers were damaged as a result of the derailment, and Plaintiffs KL and KAM have been sued in the Southern District of

New York for damages sustained to other cargo shipments. Plaintiffs allege that, after the derailment, both CMT and Plano inquired into the status of the molds and submitted claims to KL and/or KAM.

## II. **ANALYSIS**

A motion to dismiss under Rule 12(b)(6) is designed only to test the sufficiency of the complaint, not to decide the underlying merits of the case. *See Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Therefore, a plaintiff need only describe his claim in sufficient detail to "plausibly suggest that the plaintiff has a right to relief" and to give the defendants "fair notice of what the claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Although mere vagueness or lack of detail will not compel dismissal, *see Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985), the complaint must allege facts, either directly or inferentially, which set forth the essential elements of the cause of action. *See Looper Maintenance Service Inc. v. City of Indianapolis*, 197 F.3d 908, 911 (7th Cir. 1999).

### A. Claims under the Bills of Lading

In pleading claims under the Bills of Lading in Counts I, II, V, and VI, Plaintiffs are entitled of course to enforce the protections of their own KL Bill of Lading. Under the World Bill's "Himalaya Clause," which passes all protections of the carrier on

to the carrier's agents and independent contractors, Plaintiffs may also assert the terms and conditions of the World Bill.  Under both Bills, a "Merchant" warrants to the carrier that the Merchant's containers have been safely packed and stowed, and upon breach of said warranty, the Merchant must indemnify the Carrier for any loss or liability arising out of the improper stowage.  To properly state this claim, Plaintiffs must allege facts showing that (1) Defendants fit the definition of "Merchants" and (2) the Defendants are bound by the Bills of Lading.  Despite confusion, ambiguity, and contention about the Defendants' roles in the transaction and their acceptance of the Bills of Lading, Plaintiffs have alleged sufficient facts to withstand dismissal.

Under both Bills of Lading, "Merchant" includes (among others) the shipper, consignor, consignee, holder of the Bill, and any person acting on behalf of the above-mentioned parties.  Drawing all reasonable inferences in favor of Plaintiffs, both CMT and Plano fit these definitions.  Plano is clearly identified as the consignee on the World Bill of Lading, and even though not so identified on the KL Waybill, it still appears to be the ultimate consignee or receiver of goods in the transaction. The Complaint's allegation that CMT agreed to design, engineer, construct, and supply the steel molds is enough to allege that CMT (even if not an *agent* of Plano), "acted on behalf" of Plano in this transaction.  Further, as the party Plano contracted to arrange production of the

steel molds, CMT arguably could be deemed the shipper or consignor, also subjecting CMT to the duties and liabilities of a Merchant under the Bills of Lading.

Plano and CMT will not be subject to these duties and liabilities, however, unless they accepted and were bound by the Bills of Lading. *See All Pacific Trading, Inc. v. Vessel M/V Hankin Yosu*, 7 F.3d 1427, 1432 (9th Cir. 1993). While mere inquiries into the status of goods may not be enough to constitute acceptance, *see APL Co. PTE. Ltd. v. UK Aerosols Ltd.*, 2006 WL 3848784 (N.D.Cal. 2006), Plaintiffs' allegation that both Plano and CMT submitted claims to KL and KAM may be sufficient to demonstrate such acceptance. *Cf. All Pacific Trading*, 7 F.3d at 1432 (party may accept a contract by filing suit on it). This act of acceptance binds Plano and CMT to the Bills of Lading even where they did not sign or even appear on the Bills of Lading in question. *See Taisheng Intern. Ltd. v. Eagle Maritime Services, Inc.*, 2006 WL 846380 (S.D.Tex. 2006).

Even absent such traditional acceptance, Plano and CMT would still be bound by the actions of their intermediary World. Provisions in a bill of lading issued to an intermediary bind the consignee and other parties on whose behalf the intermediary arranged the shipment. *See Jockey Intern., Inc. v. M/V Leverkusen Express*, 217 F.Supp.2d 447, 456 (S.D.N.Y. 2002). This is true even without a showing of a traditional agency relationship between the

consignee and the intermediary. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 34 (2004). Thus, even though it may lack sufficiently-supported facts of actual agency between Defendants and World, the complaint does allege that both Plano and CMT communicated with World and that World specifically advised Defendants it was making the booking with KL. Drawing all reasonable inferences in favor of the Plaintiffs, these facts are enough to allege that World acted as an intermediary for Plano and CMT and could bind Defendants to the terms it negotiated.

### B. Claims of Negligence

Defendant CMT contends that any negligence actions against it are barred as a matter of law, because COGSA provides an exclusive remedy. While the cases cited by CMT recognize that COGSA sets the sole remedy in actions against *carriers*, negligence actions against *non-carriers* clearly remain permissible. *See Robert C. Herd & Co. v. Krawkill Machinery Corp.*, 359 U.S. 297, 302 (1959). Nor is CMT's attempt to stand in the shoes of a carrier (World) persuasive. The Himalaya Clause clearly extends these protections only to the carrier's subcontractors, not to the very customers against whom the Bill of Lading was negotiated.

Plaintiffs' claims of negligence are also well pled. Despite Plano's contention that it has no contractual relationship nor any other duty to Plaintiffs, the Bills of Lading clearly state a duty to load the container safely, and Plaintiffs further allege that

pertinent laws, regulations, and industry standards required Defendants to block and brace the steel molds properly. Though the parties continue to dispute whether the complaint adequately pleads an agency relationship between THI and Defendants, the complaint clearly alleges a breach of duty by Defendants in their own right. Plaintiffs state that the container was loaded in accordance with instructions from Defendants and that Plano, CMT, and/or their agents arranged for, directed, and/or otherwise participated in the loading of the steel molds. The complaint further alleges that the failure to properly load the steel molds was the cause of the derailment and damages suffered by Plaintiffs. Plaintiffs therefore have alleged all elements necessary for a well-pleaded allegation of negligence, and those claims will not be dismissed.

### C. Claims of Indemnity

Ordinarily, a claim for indemnity does not become ripe until the indemnitee has actually incurred liability in the underlying suit against it. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 127 (Ill. 1992). However, where some other claim of damages has already been fully incurred, it may be appropriate for the Court to retain jurisdiction over the contingent indemnity claims. *See Oxford Shipping Co., Ltd. v. New Hampshire Trading Corp.*, 697 F.2d 1, 8 (1st Cir. 1982). Here, the damage to Plaintiffs' shipping containers has been fully realized, and the operative provisions of the KL Bill of Lading would require

Defendants not only to indemnify KL and KAM, but also to defend them. Therefore, Plaintiffs' claims of damage and duty to defend are ripe for consideration, such that exercising jurisdiction over the indemnity claims will not create a case based solely on potential damages or speculative jurisdiction. *Cf. A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928 (4th Cir. 1977). The Court therefore denies without prejudice Defendants' motions to dismiss the indemnity claims as premature.

### D. Statutes of Limitation

CMT and Plano present numerous arguments as to why Plaintiffs' claims against them are time-barred. The statutes of limitation found in COGSA and the Bills of Lading clearly apply only to claims against the *carrier*, however, and provide no protection to Plano or CMT (despite CMT's inaccurate contention that it can step into the shoes of the carrier World). Nor are Defendants' arguments about state statutes of limitation persuasive. The relevant state statutes of limitation have not been exceeded in this case. *See* 12 Okla. Stat. § 100; *Edmison v. Crutsinger*, 25 P.2d 1103, 1109 (Okla. 1933) (permitting recommencement of suit beyond two year tort statute of limitation where the original filing failed other than on the merits, such as for lack of jurisdiction). Indeed, state statutes of limitation do not even apply in cases such as this. *See Federal Commerce & Navigation Co., Ltd. v. Calumet Harbor Terminals, Inc.*, 542 F.2d 437, 441 (7th Cir. 1976). In cases of

admiralty, the time for filing is governed by the doctrine of laches, and the inquiry of the Court focuses on the equities among the parties, including any improper delay by plaintiffs and prejudice to defendants. *See* 2 C.J.S. Admiralty § 124 (2008); *Lingenfelter v. Keystone Consol. Industries, Inc.*, 691 F.2d 339, 340 (7th Cir. 1982). While Defendants claim they have been prejudiced by the inconvenience and expense of litigating in New York, those hardships are more properly attributed to Plaintiffs' improper venue, rather than the delay in bringing the action before this Court. It is worth noting, in this regard, that Plaintiffs did not independently choose the New York forum in some act of bad faith or delay, but simply attempted to implead Defendants into the action in which they had already been sued. Defendants do not appear to have suffered any loss of evidence necessary to their defenses. Nor is this a case where Plaintiffs slept on their rights or lulled Defendants into a false sense of assurance that suit would not be brought. *Cf. Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428 (1965). The Court therefore declines to dismiss Plaintiffs' complaint on the basis of laches.

### III. CONCLUSION

It may well be that the facts in this case will show Defendants had no participation in the events surrounding the packing of the steel molds and that they should be excused from any liability for the eventual train derailment. At the stage of a

Motion to Dismiss, however, the Court must accept the well-pleaded allegations of the Complaint as true and disregard Defendants' factual arguments to the contrary. Thus, Plaintiffs' Motion to Strike Plano's Declaration of Robb Younger is **granted**. The Complaint, as pled, succeeds in stating claims upon which relief may be granted and provides Defendants with fair notice of those claims. Therefore, Defendants' Motions to Dismiss must be **denied**.

**IT IS SO ORDERED.**

                                        Harry D. Leinenweber, Judge
                                        United States District Court

**DATE:** April 25, 2008