IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KAWASAKI KISEN KAISHA, LTD.,** and "K" LINE AMERICA, INC., <br><br>   Plaintiffs, <br><br> and <br><br> **UNION PACIFIC RAILROAD CO.,** <br><br>   Intervening Plaintiff, <br><br>   v. <br><br> **PLANO MOLDING CO.,** <br><br>   Defendant. | Case No. 07 C 5675 <br><br> Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Plano Molding Co.'s ("Plano") Motion for Summary Judgment. Plaintiffs Kawasaki Kisen Kaisha, Ltd. ("KL") and "K" Line America, Inc. ("KAM") (collectively, "K-Line"), as well as intervening plaintiff Union Pacific Railroad Co. ("Union Pacific") (collectively the "Plaintiffs"), have brought breach of contract and negligence claims against Plano. They seek to hold Plano liable for damages suffered by Plaintiffs in a Union Pacific train derailment and seek indemnification for claims made against Plaintiffs by others who suffered losses in the derailment. Plaintiffs allege the derailment occurred because steel injection molds ordered by Plano broke through their shipping container and the floor of the rail car and fell onto the rail bed, where they

were struck by the next railcar. For the reasons that follow, Plano's Motion for Summary Judgment is granted.

## I. BACKGROUND

The instant case was originally brought by K-Line as a Third-Party Complaint against Plano and CMT International, Inc. ("CMT") in the Southern District of New York in response to a lawsuit against Plaintiffs by Indemnity Insurance Co. seeking to recover for cargo shipments damaged in the train derailment. Because that court did not have personal jurisdiction over Plano and CMT, the suit was dismissed and re-filed in this Court. The Multi-District Litigation Panel subsequently transferred the case to the Southern District of New York pursuant to 28 U.S.C. § 1407(a) for consolidated pretrial proceedings with other cases involving common questions of fact. Those consolidated proceedings have concluded, and the case has been returned to this Court to decide Plano's fully briefed Motion for Summary Judgment.

The following facts are taken from the parties' Local Rule 56.1 statements, deposition testimony, and exhibits. Plano is an Illinois corporation that designs, manufactures, and sells storage boxes, including fishing tackle boxes, tool boxes, and cosmetic organizers. Plano uses steel injection molds to make these products. In November 2004, Plano decided to order two new injection molds and sent out specification sheets to various mold makers, including CMT. CMT obtained price specifications from

Kunshan Yuanjin Plastic & Electronic Co., Ltd. ("Kunshan"), a Chinese company. Kunshan manufactured the steel molds at issue here.

At the request of Plano, CMT retained World Commerce Services, LLC, ("World"), a non-vessel operating common carrier, which in turn arranged the shipment of the steel molds from China to Illinois. (Non-vessel common carriers are middlemen who consolidate cargoes belonging to many different shippers and charter a ship to carry them.) World then contracted with THI Group, Inc. ("THI"), a Chinese corporation, to handle the booking of the shipment of steel molds. THI contracted with KL, a Japanese corporation that is an ocean common carrier, to transport the steel molds from Shanghai to Illinois.

World issued a bill of lading identifying Kunshan as the shipper and Plano as the consignee, or the entity designated to receive goods from the carrier. KL issued a waybill that identified THI as the shipper and World as the consignee. The KL waybill incorporated the terms and conditions of KL's bill of lading.

Kunshan loaded the steel molds into wooden crates. KL supplied the shipping container for the molds. THI loaded the steel molds into the shipping container and delivered the sealed container to KL. After receiving the container, KL transported it to California, transferring the molds to Union Pacific in Los

Angeles. Union Pacific then began transport of the molds from California to Illinois, where they were to be delivered to Plano.

While en route, the train derailed near Tyrone, Oklahoma, on April 25, 2005. Plaintiffs allege the derailment was caused by the improper loading of the steel molds in their shipping container. Specifically, they contend that the molds were packed in a manner that concentrated their weight in too small an area. For the purposes of this motion, Plano does not dispute Plaintiff's theory as to the cause of the derailment. The derailment damaged KL's shipping containers, as well as the Union Pacific's tracks, railcars and other equipment. Plaintiffs settled virtually all of the cargo claims, and now seek indemnity from Plano under the indemnity provisions of the KL and World bills of lading.

## II. **LEGAL STANDARD**

Plaintiffs assert admiralty jurisdiction under 28 U.S.C. § 1333, so the Court will apply federal maritime law. *In re M/V Rickmers Genoa Litigation*, 622 F.Supp.2d 56, 64 (S.D.N.Y. 2009); *see Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24-25 (2004)(finding bills of lading to involving overseas shipment of goods to be maritime contracts where the last leg of the journey was by rail).

Summary judgment is appropriate even though the record shows that there is no genuine dispute as to an issue of material fact. FED. R. CIV. P. 56(a). This means that if, after adequate time for discovery, the non-moving party cannot establish the existence of

- 4 -

an element essential to that party's case, and on which the party bears the burden of proof, summary judgment should be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addressing a motion for summary judgment, the court must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). However, a genuine issue of fact is not shown by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III. ANALYSIS

Plaintiffs' breach of contract claims rest on obligations they assert Plano owed them under the World and KL bills of lading, while their negligence claims contend that Plano knew, or should have known, that the steel molds posed a significant risk of harm if they were not properly loaded, and that Plano breached its duty to ensure that the molds were safely packed.

#### A. The Contract Claims

Essentially, Plaintiffs argue they are entitled to indemnification, and to recover damages for their own losses, because Plano falls into the definition of "Merchant" as set forth

in both the KL and the World bills of lading. Plano asserts that it was not a party to either bill of lading and did not accept their terms. A bill of lading "is the basic transportation contract between the shipper-consignor and the carrier; its terms and conditions bind the shipper and all connecting carriers." *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342–43 (1982). "Contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Kirby*, 543 U.S. at 31. Courts have recognized that bills of lading should be carefully construed, and should be construed against the carrier. *Maersk, Inc. v. Neewra, Inc.*, 687 F.Supp.2d 300, 330 (S.D.N.Y. 2009).

### 1. The KL Bill of Lading

Plaintiffs contend that Plano is a "Merchant," as defined in KL's bill of lading, so it was obligated under Clause 11 of that bill to ensure the steel molds were properly secured and the container they were shipped in was sound. Clause 1(h) of the bill of lading provides:

> Merchant includes the shipper, consignor, consignee, owner and receiver of Goods, and Holder, and anyone acting on behalf of any such person, including but not limited to agents, servants, independent contractors and freight forwarders.

Clause 11 of the KL Bill of Lading provides:

> If Goods received by Carrier are in Container(s) into which contents have been packed by or on behalf of Merchant, Merchant warrants that the stowage and securing of the contents of the Container(s) and their closing and

- 6 -

sealing are safe and proper and also warrants that Container(s) and contents thereof are suitable for Carriage in accordance with the terms hereof including Clause 15. In the event of Merchant's breach of said warranties, Carrier shall not be responsible for any loss or damage to any property, or for personal injury, death or the consequences of any other accidents or events whatsoever and shall defend, indemnify and hold Carrier harmless against all loss, damage, liability, cost or expense, including attorneys' fees, arising out of or in any way connected with said accidents or events. Merchant shall inspect Container(s) when the same are furnished by or on behalf of Carrier, and they shall be deemed to have been accepted by Merchant as being in sound and suitable condition for the purpose of Carriage contracted herein.

It is undisputed that Plano is not named in the KL bill of lading, which names THI as the shipper and World as the consignee. The question is whether Plano can nonetheless be bound, which is determined by looking to the general principles of contract formation and interpretation. *In re M/V Rickmers*, 622 F.Supp.2d at 71 (citing *Kirby*, 543 U.S. at 31). Simply put, the buyer cannot be deemed to fall under a "Merchant" clause unless the buyer is a party to the bill of lading or has consented to be bound by its terms. *In re M/V Rickmers*, 622 F.Supp.2d at 72; *see United States v. Waterman S.S. Corp.*, 471 F.2d 186, 189 n. 4 (5th Cir. 1973)("A party cannot unilaterally employ definitions to bind another by provisions to which the other has not consented to be bound.").

Nonetheless, Plaintiffs argue that Plano can be bound by the bill because it had a future interest in the goods, and was thus a third-party beneficiary to the contract, and the consignee, World, and the shipper, THI, were its agents. Courts have recognized that

an intended beneficiary to a bill of lading may be bound through an agency relationship with one of the contracting parties. *In re M/V Rickmers*, 622 F.Supp.2d at 72; *see Taisheng Int'l Ltd. v. Eagle Mar. Servs. Inc.*, No. Civ. A. H-05-1920, 2006 WL 846380, at *4-5 (S.D. Tex. March 30, 2006)(finding sufficient evidence at dismissal stage that shipper acted as consignee's agent, binding consignee to the bill of lading).

Here, however, the Court finds as a matter of law that World was not Plano's agent, but an independent contractor. It is true that in certain circumstances, intermediaries like World are assumed to be agents for the cargo owner. For example, "when an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed." *Kirby*, 543 U.S. at 33; *see Nebraska Wine & Spirits, Inc. v. Burlington N. R.R. Co.*, No. 91-0103-CV-W-2, 1992 WL 328938, at *3-4 (W.D. Mo. Sept. 29, 1992)(holding that owner of goods was bound to the conditions of shipping agreed to by shipper and freight forwarder). The cases that Plaintiffs cite for the proposition that Plano may be bound by the bills of lading because it had actual or constructive notice of their terms deal with limitations on liability of the carrier, not a situation in which a carrier seeks to impose liability on a cargo owner for the alleged actions of an intermediary or the shipper of the goods. In fact, the Supreme

Court has held that "the intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable." *Kirby*, 543 U.S. at 33; *see In re M/V Rickmers*, 622 F.Supp.2d at 73 n.23 ("If taken literally, the notion that consignors and consignees can be assumed to be in a principal/agent relationship would expose consignees to potentially limitless liability for the conduct and contracts of their consignors."). This observation is particularly apt in this case, where Plano did not pack or ship the goods at issue, nor did it supervise the entities that did.

The applicability of an agency theory of liability must be considered on a case-by-case basis. *In re M/V Rickmers*, 622 F.Supp.2d at 73 n.23. "An agency relationship exists only if there has been a manifestation by the principal to the agent that the agent may act on his account, and consent by the agent so to act." *Restatement (Second) of Agency* § 15 (1958). Authority to act can be created by written or spoken words of the principal, which, reasonably interpreted, makes the agent believe that the principal wants him to act on the principal's behalf. *Id.* at § 26. A principal has the power to control the agent's conduct regarding matters entrusted to the agent. *Id.* at § 14.

As opposed to an agent, an independent contractor is a person employed by another to perform work, but who follows the employer's instructions only as to the results of the work, and not the means
- 9 -

by which the work is accomplished. *Carter v. American Oil Co.*, 139 F.3d 1158, 1162 (7th Cir. 1998). The most significant factor in determining whether an independent contractor relationship exists is the right to control the manner and means by which the work is to be performed. *Knight v. United Farm Bureau Mut. Ins. Co.*, 950 F.2d 377, 378 (7th Cir. 1991). While the existence of an agency relationship is generally a question of fact, courts may make the determination as a matter of law if the relevant facts are undisputed. *Carter*, 139 F.3d at 1162.

In arguing that World was Plano's agent, Plaintiffs point to deposition testimony of Robb Yunger ("Yunger"), Plano's former vice president of engineering. Yunger testified he told World that Plano wanted to ship the molds in a 20-foot container and ship them FCL, meaning that the molds would be the only cargo in the container. World then arranged transportation of the molds with KL. Yunger testified that he was aware the molds were going to be shipped on a KL vessel and then taken by train from California to Chicago.

Plaintiffs also point out that World had a long-standing relationship with Plano in that between March 2003 and March 2005, World arranged several shipments of steel injection molds for Plano. John Wember ("Wember"), a former employee of World involved in this transaction, testified in a deposition that Plano had the opportunity to reject using KL as the shipper for the steel molds,

- 10 -

but did not do so. Wember was then asked if Plano agreed to use KL, to which he responded, "they trusted us to get it here as fast as possible."

Although Plaintiffs describe Plano's instructions to World as "highly specific instructions" that show Plano had the right to control World, it is undisputed that CMT hired World, although it did so at Plano's request. Plano did not direct World as to what shipper to select, nor did it pay World. (CMT paid World.) The few instructions outlined above do not serve to create a question of fact as to an agency relationship between World and Plano. An employer of an independent contractor may set minimum performance and quality standards without creating an agency relationship between the parties. 19 *Williston on Contracts* § 54:3 (4th ed. 2010).

It also is significant that Yunger did not consider World to be Plano's agent, nor did Plano supply the instrumentalities for World to carry out its work. Plano had used World for prior transactions, but Plano had no financial interest in it. World apparently was paid by the job to arrange shipping, a task in which it specialized and which was beyond the scope of Plano's regular business. These are all factors that point to the existence of an independent contractor relationship. *See id.* at § 54:2; Julian Cooke, et al., Voyage Charters § 18.77 (3d ed. 2007)("The general rule is that a party who procures shipment for the ultimate benefit

of a consignee does not thereby contract with the carrier as agent of the consignee."). Similarly, CMT, which hired World, was not Plano's agent, but a broker that filled its order.

As to THI, there is no evidence that Plano supervised its loading of the molds or had any communications with THI as to how the molds should be loaded into the shipping container. KL essentially argues that THI was World's subagent in carrying out the instructions Plano gave to World regarding the shipment. But because those instructions were insufficient to create an agency relationship between Plano and World, they are likewise insufficient to create an agency relationship between Plano and THI. Therefore, because Plano was not a party to the KL bill of lading, nor a principal of a party to the bill of lading, it cannot be bound by it.

### 2. *The World Bill of Lading*

Additionally, Plaintiffs contend that Plano falls within the definition of a "Merchant" in the World bill of lading, which is defined in Clause 2.3 as including: "the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the goods or any person acting on behalf of the above-mentioned persons." Further, the World bill provides in Clause 10 that when a container is "packed by merchant" and the carrier receives the goods already packed, the "Merchant warrants that the stowage and seals of the

containers are safe and proper and suitable for handling and carriage and indemnifies Carrier for any injury, loss, or damage caused by this breach of warranty." Although not a party to the World Bill of Lading, Plaintiffs claim protection under Clause 3, a so-called "Himalaya Clause," which passes all protections of the carrier onto the carrier's agents and independents contractors. The first consideration relevant to the World Bill of Lading is whether the Plaintiffs, who were not parties to it, may nonetheless enforce it. World's bill of lading identifies itself as the carrier, and provides, in Clause 3:

> Carrier shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods. Every servant, agent, subcontractor, including sub-subcontractors), or any person whose services have been used to perform this contract shall be entitled to the rights, exemptions from, or limitations of, liability, defenses and immunities set forth herein.

This "Himalaya Clause," by its plain language, extends World's protection to Plaintiffs, including Union Pacific as KL's contractor. *See Kirby*, 543 U.S. at 31–32.

Plano is the named consignee on the World bill of lading. Plano argues that it is undisputed that this was an error based on the testimony of Yunger and Wember to that effect. In an email to Wember prior to shipment, Yunger requested that CMT be listed as the consignee. Further, Wember testified that the true consignee should have been CMT because Plano's purchase term was DDP, meaning

that Plano was not to take possession of the goods until they arrived at its door. Wember testified that at the time of the derailment, the molds belonged to CMT. However, he also testified that Plano was never removed from the bill of lading as the named consignee. Plaintiffs also note that World had previously named Plano as the consignee on at least 13 prior bills of lading.

However, even if the Court were to find a question of fact as to whether Plano was the true named consignee, that does not address the issue of whether it can be bound by the bill of lading when it did not negotiate the terms of that bill and has not sought benefits under it. *Taisheng Intern. Ltd.*, 2006 WL 846380, *3. Nor is there any agency relationship that binds Plano. Here, the World bill of lading was issued by THI at the direction of World. As explained above, neither World nor THI were Plano's agents, so Plano cannot be bound through those entities. As such, Plano is entitled to summary judgment on Plaintiffs' claims under the World bill of lading.

### B. The Negligence Claim

Plaintiffs allege that Plano had a duty of care to ensure the proper securing of the steel molds because it instructed World as to how to pack and ship them. Additionally, Plaintiffs allege that that duty of care extended to Plano's agent, World, and World's subagent, THI. As discussed above, however, neither World nor THI was an agent of Plano.

Whether a duty of care exists is a question of law. *Staples v. Krack Corp.*, 186 F.3d 977, 979 (7th Cir. 1999). Under the federal maritime common law, buyers do not typically owe carriers and fellow cargo owners a duty of care. *In re M/V Rickmers*, 622 F.Supp.2d at 65 (citing *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1077 (2d Cir. 1993)). The reason behind this is that typically, "[a]s between carrier, shipper, and consignee, the consignee would be least likely to possess the necessary knowledge to have avoided any difficulty arising from improper packaging." *Atkins Kroll & Co. v. Nedlloyd Line*, 210 F.Supp. 315, 317 (D.C. Cal. 1962). As Plano argues, if a buyer of products overseas is potentially liable for the incorrect packaging of goods that it did not pack, load, or ship, a party ordering goods overseas could be subject to potentially limitless tort liability.

Some courts have held that a different rule might obtain where the buyer had unique knowledge of the known risks associated with its product. *M/V Rickers*, 622 F.Supp.2d at 65 (citing *Aslandis*, 7 F.3d at 1077). Further, a buyer might be subject to liability if it was on notice of some incompetence on the part of the shipper. *Id.* (citing *Di Gregorio v. N.V. Stoomvaart Maatschappij "Nederland,"* 411 F.Supp. 331, 335 (S.D.N.Y. 1975)). Here, there is no evidence that Plano was on notice that the parties who packed and shipped the container were unable to do so properly. Nor is there any evidence that Plano was aware of a risk from

concentrating the weight of the molds in too small an area. As such, Plano is entitled to summary judgment on Plaintiffs' negligence claim.

## IV. CONCLUSION

For the reasons stated herein, Defendant Plano Molding Co.'s Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

**DATE:** 7/27/2011

- 16 -