IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAWASAKI KISEN KAISHA, LTD., and "K" LINE AMERICA, INC., Plaintiffs, and UNION PACIFIC RAILROAD CO., Intervening Plaintiff, v. PLANO MOLDING CO., Defendant. | Case No. 07 C 5675 Hon. Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Before the Court are the trial record and post-trial briefing of Plaintiffs Kawasaki Kisen Kaisha, Ltd. and "K" Line America, Inc. (hereinafter, collectively, "K-Line"), Intervening Plaintiff Union Pacific Railroad Co. (hereinafter, "UP"), and Defendant Plano Molding Co. (hereinafter, "Plano"). For the reasons stated herein, the Court finds in favor of Plaintiffs.

### I. FACTUAL BACKGROUND

As the factual background of this dispute has been described repeatedly, *see, e.g.,* ECF No. 78, only a cursory review of the underlying facts is provided here.

Plano is an Illinois corporation that designs, manufactures, and sells plastic storage boxes. Plano contacted CMT International ("CMT"), a company that assists American customers who wish to purchase products from Asia, because it needed new molds. CMT solicited bids from manufacturers, and Plano selected Kunshan, a Chinese company, as its fabricator for two steel molds (the "Molds") for its Illinois factory.

World Commerce Services LLC ("World") was selected to coordinate the Molds' transportation from China to the United States. The original shipping terms were Free on Board Shanghai ("FOB Shanghai"), which indicates that the buyer takes ownership of the goods as soon as they pass over the rail of the ship. However, there was discussion between Robb Yunger ("Yunger") of Plano, John Wember ("Wember") of World and Amna Shah ("Shah") of CMT as to altering the delivery terms from FOB Shanghai to Delivered Duty Paid ("DDP"). Despite that discussion, the terms were not changed and the World Bill of Lading identifies Plano as the consignee. Plano received the World Bill of Lading on April 3, 2005. It contained a "Himalaya clause" that grants World's subcontractors all warranties and indemnities defined in the Bill of Lading. Under Section 2.3, a "Merchant" is defined as "the Shipper, the Receiver, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of

the above-mentioned persons." J. Ex. 79 at WCS 000161. According to the World Bill of Lading, if any party other than World packs the shipping container, the Merchant warrants "that the stowage and seals of the containers are safe and proper and suitable for handling and carriage and indemnifies [World] for any injury, loss or damage caused by breach of this warranty." *Id.* at WCS 000165.

As the freight forwarder, World contracted with THI Group Ltd. ("THI") and K-Line to ship the Molds from China to Illinois. K-Line in turn subcontracted shipping within the United States to UP. The Molds were on a UP train in Oklahoma on April 21, 2005 when it derailed, causing $4 million of damage to UP and K-Line customers.

## II. PROCEDURAL BACKGROUND

Following the derailment of the UP train, various Complaints were filed in the Southern District of New York by owners of cargo damaged by the derailment, as well as among the parties to this lawsuit. K-Line filed an action in this District against Plano and CMT, but it was consolidated for pre-trial proceedings in the Southern District of New York with eight other actions. All the other claims settled, leaving only Plaintiffs' suit against Plano, which the Southern District of New York transferred back to this District.

On July 27, 2011, the Court granted Plano's Motion for Summary Judgment on Plaintiffs' breach of contract and negligence claims. With respect to the breach of contract claims, Plaintiffs argued that they were entitled to indemnification and damages because Plano was a "Merchant" as defined in the K-Line and World Bills of Lading. Plano responded that it was not a party to either Bill of Lading and did not accept their terms.

The Court agreed with Plano, finding that because it was not a party to the K-Line Bill of Lading, nor a principal of a party to the Bill of Lading, it could not be bound by it. While the Court noted some discrepancies as to whether Plano was the true consignee to the World Bill of Lading, it found that Plano could not be bound through the actions of World or THI, and granted summary judgment on Plaintiffs' claims under the World Bill of Lading. The Court also granted summary judgment in Plano's favor on Plaintiffs' negligence claims.

Plaintiffs appealed, and the Seventh Circuit affirmed the Court's decision regarding the negligence claims and Plaintiffs' breach of contract claims under the K-Line Bill of Lading. However, the Seventh Circuit found unresolved questions of fact material to the determination of Plaintiffs' contract claims based on World's Bill of Lading. The Seventh Circuit stated that, in analyzing Plaintiffs' contention that Plano is bound by the terms of the World Bill of Lading as a contracting party, "we

- 4 -

must consider Plano's role in obtaining World as the freight forwarder for the molds' transportation." *Kawasaki Kisen Kaisha, Ltd. v. Plano Molding Co.*, 696 F.3d 647, 656 (7th Cir. 2012). The Seventh Circuit found this question important, because "if Plano engaged World to handle the shipment on its own behalf, it could be found liable to K-Line and Union Pacific by the plain terms of the World Bill of lading." *Id.* The Court found the evidence surrounding the Plano/CMT/World transaction "murky at best," and concluded that conflicts in the record created a material question of fact that required remand. *Id.* As such, the Seventh Circuit concluded:

> On this record, we are unable to ascertain whether CMT or Plano arranged the molds' shipment with World. Without this determination, we cannot conclude whether or not Plano engaged World in a manner that would impose liability as a contracting party, and subject Plano to liability under the World bill of lading. As to this narrow issue, we reverse the district court's grant of summary judgment and remand for further consideration.

*Id.* at 657-58.

On June 24, 2013, the Court conducted a one-day bench trial focusing on the narrow issue raised by the Seventh Circuit with respect to the World Bill of Lading. Plaintiffs and Plano presented both live and deposition testimony regarding the Plano/CMT/World transaction. After the trial concluded, the Court directed the parties to submit post-trial closing briefs.

### III. **DISCUSSION**

### A. **Evidentiary Rulings**

None of the parties filed motions *in limine* prior to trial, but both sides identified exhibits to which they objected in the Pre-Trial Order. ECF No. 153. The parties resolved many of their objections prior to trial, but a few remain. Plano objected to several exhibits that dealt with a prior mold shipment (Pls.' Exs. 2, 9, 18, 20 and 21) and K-Line's service contract with World to which Thomas Kessery ("Kessery") testified (Pls.' Ex. 88). Plaintiffs objected to five pretrial pleadings that Plano seeks to admit (Defs.' Exs. 1, 2, 3, 4, 5).

The basis for Plano's objections to all six of Plaintiffs' contested exhibits is lack of relevancy. "The basic rule governing a federal trial is that all relevant evidence is admissible," except as otherwise provided by law. *United States v. Thompson,* 990 F.2d 301, 303 (7th Cir. 1993); FED. R. EVID. 402, 403. While the Court finds the exhibits to be of limited relevance for the narrow issue being examined here, it declines to strike them. Those documents involving previous mold shipments have some relevance to the shipping terms, as discussed below.

Plano's five pre-trial pleadings require a bit more consideration. The Court, curious as to the manner in which

Plano sought to use these pleadings as evidence, allowed Defense Counsel to address them in his opening statement. Plano relied on these pleadings as support for the contentions that (1) Plano directed CMT to hire World (Def.'s Exs. 3, 4; Tr. at 21-23); (2) Plano instructed World and CMT to change the sales term from FOB to DDP (Def.'s Ex. 1, Tr. at 21); (3) CMT billed Plano for the cost of shipping (Def.'s Ex. 4; Tr. at 22); and (4) CMT was obligated contractually to and did arrange for the shipment of the Molds, and fits the contractual definitions of shipper and owner as it owned the Molds at the time of derailment under a DDP delivery term (Def.'s Ex. 2, Tr. at 22). The purpose of Defendant's Exhibit 5 was unclear during Plano's opening statement.

Plano argues that these documents should be admitted as exhibits, either because they constitute judicial admissions or because they constitute admissions of a party's agent pursuant to Federal Rule of Evidence 801(d)(2)(D). Plaintiffs respond that Plano is misconstruing legal arguments Plaintiffs made in the early stages of this litigation as binding admissions of fact. K-Line Closing Br. at 11.

Both parties agree that judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding on the party making them. *See, e.g., Pierce v. City of Chicago,* No. 09-CV-1492, 2012 U.S. Dist. LEXIS

14331 at *9 (N.D. Ill. 2012). They may not be controverted at trial. *Id.* "Judicial admissions . . . are not limited to statements made in a particular motion or application pending. Any deliberate, clear, and unequivocal statement, either written or oral, made in the course of judicial proceedings qualifies as a judicial admission." *Id.* (quotations omitted). As a general rule, factual admissions are binding on a party as a judicial admission unless withdrawn or amended. *Canon U.S.A. v. Nippon Liner Sys.*, 90 C 7350, 1992 U.S. Dist. LEXIS 7659 at *6 (N.D. Ill. Jun. 2, 1992). A counsel's legal conclusions, however, are not binding as judicial admissions. *Id.*

The first three statements above are clearly factual in nature, and contrary to Plaintiffs' contentions, are not legal arguments. As such, the Court denies Plaintiffs' request to strike Defendant's Exhibits 1, 3, and 4, and they are admitted for the limited purpose described in Plano's opening statement.

The fourth statement above is more problematic. Plano wishes to admit Defendant's Exhibit 2, Plaintiff's Memorandum of Law in Opposition to Defendant CMT International Inc.'s Motion to Dismiss the Complaint, to try to demonstrate that CMT was responsible for shipping the molds from China. In particular, Plano quoted the following passage from the memorandum in its opening statement:

> CMT fits this definition as the "shipper" or the "consignor," since CMT was contractually obligated to – and did – arrange for the shipment of the Steel Molds from China. CMT also fits the definition as the "owner," as it was the owner of the Steel Molds at the time of the derailment under a D.D.P. delivery term.

Tr. at 22 (quoting Defs.' Ex. 2 at 12). The Court first notes that this statement is of questionable relevance, since it is discussing contractual terms of K-Line's transportation contracts, not the World Bill of Lading. *See* Def.'s Ex. 2 at 12. In addition, the Court finds this paragraph, which was advocating Plaintiffs' stance as to contractual interpretation, to be more "in the nature of a legal conclusion" than a factual admission. *See Cannon USA*, 1992 U.S. Dist. LEXIS 7659 at *7. As such, the statement is not a binding judicial admission and cannot be relied upon by Plano. For the same reason, the Court declines to treat the statement as an evidentiary admission of a party's agent pursuant to Federal Rule of Evidence 801(d)(2)(D).

For these reasons, the Court thus sustains Plaintiffs' objections as to Defendant's Exhibit 2. The Court also sustains the objections to Defendant's Exhibit 5, as it is unclear for what purpose Plano sought to use that document.

### B. Findings of Fact and Conclusions of Law

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following written Findings of Fact and Conclusions of

- 9 -

Law based upon consideration of all the admissible evidence as well as this Court's own assessment of the credibility of the trial witnesses.

### 1. Findings of Fact

#### a. Plano Selected World to Ship the Molds and Gave World Instructions How to Do So

It is undisputed that Plano selected World as its forwarder with respect to shipping the Molds. Yunger admitted in his written declaration that he requested World be used in connection with the shipping of the Molds due to his favorable experiences with World with prior shipments. J. Ex. 101 ¶ 32. Indeed, Wember testified that he did not have any direct dealings with CMT regarding the shipment of the Molds. J. Wember Dep. at 54. Instead, he dealt directly with Plano. *Id.*

Plano's involvement in arranging the shipment of the Molds with World is further evidenced by several instructions Plano issued to World regarding the mold shipments. For example, Yunger instructed Wember in a March 4, 2005 email that he wanted to ship the Molds "full container load," or "FCL," which means that the only cargo in the container was to be the Molds. J. Ex. 66 at Plano 00101; Yunger Dep. at 118-19. Yunger further told Wember that he could use a twenty-foot container for the Molds. J. Ex. 66 at Plano 00101; Yunger Dep. at 119.

The foregoing evidence and testimony establish that Plano selected World as its forwarder and more likely than not worked directly with World to arrange the shipping of the Molds.

### b. *The Molds Were Shipped FOB Shanghai*

As noted by the Seventh Circuit, there is conflicting evidence as to the shipping terms. Plano contends that the terms were changed from FOB to DDP. This argument is supported by email exchanges in which Yunger of Plano instructed Wember of World that he wanted to ship the Molds FCL and "terms to shipper were FOB Shanghai." J. Ex. 66 at Plano 00100-101. Yunger asked Wember to arrange shipping and billing on the same terms as the last molds, except these molds were from China. *Id.* Wember responded that the previous shipment had been DDP, and not FOB as Yunger requested. *Id.* at Plano 00099-00100. Yunger responded to Wember that "[t]his should be same as last time. Please correct as needed to reflect DDP (Delivery Duty Paid) to CMT." *Id.* However, the evidence shows that Wember was mistaken in his statement to Yunger that the previous mold was sold to Plano on DDP terms. *See, e.g.,* Tr. at 57-58.

Despite Yunger's directive to World based on Wember's erroneous statement, the terms were never changed to DDP. There is no evidence that Plano sought to change the terms with CMT or Kunshan, and indeed, both Samuel Wu ("Wu") and Monica Lien

("Lien") of CMT testified that CMT received no such request from Plano. *See* Tr. at 56, 114.

Plano's claim that the shipment was supposed to be DDP is also contradicted by further evidence. First, Plano's requests for quotations for the Molds and the attached specifications required bids on FOB terms. *See* J. Ex. 3 at CMT-0001 ("F.O.B.: Port of shipment in tool shop country"), CMT-0006 ("The quote is not to include the cost to deliver the mold to Plano Molding Company"); *see also* J. Ex. 4. Indeed, Kunshan's and CMT's quotes were both based on FOB load port. *See* J. Ex. 7 ("Mold cost quoted FOB shanghai"); J. Ex. 8 ("Mold cost is F.O.B. Shanghai"). Second, Plano's purchase orders with CMT were on FOB terms, which is how CMT invoiced Plano. *See, e.g.,* J. Exs. 10, 62. This is consistent with Plano's prior shipments with CMT, as both Wu and Lien testified that shipments were always on FOB terms. See Tr. at 59, 114. Third, while it is true that Plano did not pay World directly for the freight, *see* J. Ex. 101 ¶ 36, it is also true that CMT invoiced Plano for the freight and customs duties in addition to the costs of the Molds, *see* J. Exs. 93, 94. The fact that Plano paid for freight and customs, although through CMT, is also consistent with a FOB shipment. Fourth, CMT charged Plano for a FOB sale in all six invoices that were issued for the

Molds, including several after Yunger's email to Wember asking for DDP terms. *See* J. Exs. 13, 14, 62, 63, 93, 94.

Plano put forth evidence that CMT returned all monies that Plano paid for the Molds after they were destroyed in the derailment. Plano argues that this reflects a DDP transaction in which CMT bore the risk of loss until actual delivery was made to Plano, because in a FOB transaction, Plano would have owned the Molds at the time of the transaction and would have borne the risk of loss. However, Wu explained that CMT's decision to return that money to Plano was necessary to continue doing future business with Plano. Tr. at 72-73, 78-79. Plano provided no evidence to call that explanation into question, and the Court has no reason to doubt it.

Thus, based on the foregoing evidence and testimony, the Court finds that it is more likely than not that the sale terms for the purchase of the Molds were FOB, and not DDP.

*c. Plano is the Consignee of the World Bill of Lading*

It is undisputed that Plano is listed as the consignee for the Molds on the World Bill of Lading and the World arrival notice. J. Exs. 78, 84. Plano presented testimony from Wember that this was a mistake. Wember Dep. at 33-34. However, an internal discussion at World involving Wember and his colleague, Amna Shah ("Shah"), concerning the World Bill of Lading made it clear that Plano should be the consignee, even after Wember

- 13 -

suggested that CMT, not Plano, should be consignee. Shah responded to Wember's suggestion, "[p]lease follow my instruction that are: consignee on H B/L will be Plano Molding not CMT." J. Ex. 65 at WCS 285-86. Wember then acknowledged, "[y]es, I was wrong and you were right. I should just leave you alone, he he he." *Id.* The World Bill of Lading thus lists Plano as the consignee. Thus, Wember's testimony that Plano was listed erroneously on the World Bill of Lading is contradicted both by his own email to Shah as well as the fact that the bill of lading was never altered. As such, it is more likely than not that Plano was the consignee on the World Bill of Lading.

### *2. Conclusions of Law*

As the Seventh Circuit explained, a bill of lading can serve many functions, such as (1) an acknowledgment for the receipt of goods; (2) evidence of title; or (3) evidence of a contract of carriage. *Kawasaki Kisen Kaisha*, 696 F.3d at 652. The bill of lading is the transportation contract between the shipper and the carrier, and its terms and conditions bind the shipper and all connecting carriers. *Id.* "Contracts for carriage of goods by sea must be construed like any other contracts: by their terms and consistent with the intent of the parties." *Id.* (quoting *Norfolk Southern R.R. Co. v. Kirby*, 543 U.S. 14 at 31). The question before the Court on remand is whether, based on its

relationship to World, Plano can be bound to the World Bill of Lading as the purchaser of the Molds. The Court finds that it can.

The World Bill of Lading contains "Merchant" and "Himalaya" clauses that protect K-Line and UP.

Clause 3 of the World Bill of Lading states:

> Carrier shall be entitled to subcontract directly or indirectly on any terms the whole or any part of the handling, storage, or carriage of the goods and all duties undertaken by Carrier in relation to the goods. Every servant, agents, subcontractor (including sub-subcontractors), or other person whose services have been used to perform this contract shall be entitled to the rights, exemptions from, or limitations of, liability, defenses and immunities set forth herein. For these purposes, Carrier shall be deemed to be acting as agent or trustee for such servants, agents, subcontractors, or other persons who shall be deemed to be parties to this contract.

J. Ex. 79 at WCS 000161-62.

Clause 2.3 states:

> 2.3 "Merchant" includes the Shipper, the Received, the Consignor, the Consignee, the Holder of this Bill of Lading and any person having a present or future interest in the Goods or any person acting on behalf of any of the above-mentioned persons.

*Id.* at WCS 00161.

Clause 10 states in part:

If Carrier receives the goods already packed into containers:

. . .

> 2. Merchant warrants that the stowage and seals of the containers are safe and proper and suitable for handling and carriage and indemnifies Carrier for any injury, loss or damage caused by breach of this warranty;

. . .

*Id.* at WCS000165.

As the Seventh Circuit stated, to determine whether Plano can be bound to the terms of the World bill of lading as a contracting party, it is necessary to consider Plano's role in obtaining World as the freight forwarder. *Kawasaki Kisen Kaisha*, 696 F.3d at 656. The Court's Findings of Fact, as stated above, indicate that it is more likely than not that Plano engaged World to handle the shipment on its own behalf. Specifically, it is undisputed that Plano selected World as its forwarder, and instructed CMT to contact World regarding the shipment. It appears that Plano was the entity that had direct contact with World regarding the shipment, and instructed World as to some of the shipping arrangements.

The record also indicates that it was more likely than not Plano's obligation to arrange the Molds' transportation. While Plano claims that the shipment was supposed to be DDP and not FOB, the record before the Court contradicts that claim. In seeking bids for the Molds, Plano requested and received bids according to FOB shipping. The invoices it received reflected

FOB shipping.  While there was discussion between Yunger and Wember about changing the terms to DDP, the Bill of Lading reflects FOB shipping terms, listing World as the consignee. While Wember testified that this was a mistake, internal World emails contradict his statement, and it is undisputed that no correction or change to the shipping terms was ever made.  On this record, the Court determines that it is more likely than not that Plano was obligated to and arranged the Molds' shipment with World.  As such, Plano is bound to the World Bill of Lading and may be held liable to Plaintiffs pursuant to the Merchant and Himalaya clauses in the World Bill of Lading.

In addition to holding that Plano is subject to the World Bill of Lading, Plaintiffs also request that the Court hold that Plano's liability to them under the World Bill of Lading "is also based on the Merchant, Himalaya and Subcontractor clauses under 'K' Line's Bill of Lading which was fully incorporated therein by reference."  K-Line Closing Br. at 15.  Plaintiffs rely heavily on the testimony of Kessery, who they claim testified that "these provisions were incorporated by reference in the World Bill of Lading under Clauses 2.3, 10.2 and 22."  *Id.*

The Court declines to hold that Plano's liability to Plaintiffs may also be based on the Merchant, Himalaya and Subcontractor clauses under K-Line's Bill of Lading.

First, such an analysis and ruling would be outside the narrow issue this Court was directed to examine on remand by the Seventh Circuit. The present analysis is limited to whether Plano is a party to the World Bill of Lading and may be held liable under it to Plaintiffs. Second, while the Court allowed Mr. Kessery to testify at trial, it affords little weight to his testimony. Not only was he disclosed after discovery closed, but Plaintiffs' counsel acknowledged that he is not the K-Line employee who was involved directly in negotiating the service contract between K-Line and World, and that he was not testifying as an expert. Tr. at 5, 134-35. In addition, the Court finds much of his testimony to be irrelevant or duplicative of issues already determined in the case. Finally, while Plaintiffs state repeatedly that the Merchant and Himalaya clauses of the K-Line Bill of Lading were fully incorporated in the World Bill of Lading by reference, the Court fails to see how this is so, even with Kessery's self-serving testimony. As such, the Court declines to rule that Plano's liability is also based on the K-Line's Bill of Lading.

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Finds that Plano is bound as a party to the World Bill of Lading and may be held liable to Plaintiffs;

2. Denies Plano's objections to Plaintiffs' Exhibits 2, 9, 18, 20, 21 and 88;

3. Denies the Plaintiffs' objections to Plano's Exhibits 1, 3, and 4; and

4. Sustains the Plaintiff's objections to Plano's Exhibits 2 and 5.

The parties are to appear before the Court on Thursday, July 25, 2013 at 9:00 a.m. to set a trial date on the issues of causation and damages.

**IT IS SO ORDERED.**

                                                                Harry D. Leinenweber, Judge
                                                                United States District Court

**DATE:** July 19, 2013